Good morning. May it please the Court, my name is Anne Traum, appearing on behalf of Cesar Dent. I'm going to reserve two minutes for rebuttal, and I will try to keep my eye on the clock. Dent asked this Court to, one, recognize that he has alleged a due process claim under Brown, and further, to conclude that he is entitled on this record to relief under Brown a grant of citizenship because the government, for over a period of over three decades, obstructed his ability to naturalize and obstructed his ability to develop his citizenship claim. I want to focus on that culpability element because it's so essential under Brown. And in this case, we have a history that encompasses such a long period of time, I want to focus on three particular periods. First, in 1982, his adopted mother timely filed a naturalization application with four years to go. She later warned the government that time was running short and was reassured in 1984 by the government that he was on track. Then a note in his file in 1985 said, and I quote, the authorities were hoping to deport him. The next thing we know is that his interview was scheduled three months after he turned 18, so he had aged out and was no longer eligible to naturalize on that petition. This case has a little bit of a different sort of history to it. My understanding is that a prior panel remanded to district court the issues that relate to citizenship, correct? Yes. And the government urged the district court, which it did, to only consider whether he had strictly complied with the statute in terms of naturalizing. The court concluded that it didn't. Well, I'm about to get to that. So the district court granted the government's motion for summary judgment. Yes. And did not factually explore what you've just described. Correct. Whether that amounts to estoppel or gets your client over the hurdle, the summary judgment simply concluded that he had been denied the child application and the adult. Am I correct? Yes, that he was ineligible under the child application and had never finalized the adult application. So the court dismissed all of these facts go to Dent's due process claim. The district court dismissed his due process claim as beyond the scope of the transfer and then made an extremely damaging and prejudicial factual finding that there was no delay, even though this was in the context of a motion to dismiss basically on jurisdictional grounds. And that delay was actually irrelevant to his strict compliance with the statute. And if that we need that, if we go back down, we need this court to vacate that finding so that he can actually meaningfully explore all of the facts that relate to the due process claim, because if that delay finding stands, it guts literally his Brown due process claim. So I want to just skip forward. So in 2005, the second aspect of culpability, right, is there's at the time of the petition and then in 2005 when Dent said in removal proceedings, I am a citizen, the government, and asked for documents, the government stonewalled, gave him nothing, objected to a continuance so he could get those documents, and only turned over any documents from his A file until this Court ordered it to do so in Dent 1 in 2010. Then in 2008, when Dent was facing criminal proceedings, only then did the government perceive that it was in its own interest to get busy on that application, dusted it off so that it could deny his application almost 27 years after it was filed, finally giving Dent notice. Kagan. Let me interrupt you for a minute there. Yeah. Somewhere in this time period, I know you're going to probably turn to it later, but I'm concerned about all the interviews that were scheduled and missed. Were you going to talk about that in due time? I'm happy to talk about that. So in 1980, so first of all, when his mother filed the application, which is timely with four years left on the clock, the government first did nothing for a year and a half. Then it scheduled two interviews, each with about two weeks' notice, and his mother was in constant communication regarding both of those interviews to reschedule them. So she responded to the first interview, and then on the second interview had communicated closely before and after it appears from this record about the application. She was reassured. So she didn't show up at those interviews, but at the same time she was reassured in 1984 by the agency, we will do everything we can to get him his citizenship. So there was no communication that there was some problem at that moment. Then nothing happened, probably for a year, because it's in 1985, there's that note in the file, the authorities were hoping to deport him. And there's nothing else in the file until we have the notice in 1986 after he'd aged out. Do you have to prove on, I guess it's the estoppel claim, do you have to prove something more than mere government botching? Yes. Under Brown, the standard for culpability is deliberate indifference or arbitrary or intentional obstruction. And I think we have it here not just during the time frame of that original childhood and then the following adult application, which I view on this record as one due process claim, right, one person throughout their history in naturalization, which I believe is how Brown also frames it. On the adult application, didn't it give a number of different addresses? So it's very unclear from the record what exactly the timeline was of the addresses, but they sent his — he did acknowledge that he failed to address — failed to change his address at certain times. But at the same time, we also have the government claims in its final hearing notice that there were four interviews scheduled. On this record, we only have two notices. The first notice went to an address that was in California and that Dent had written from. And the second notice — no, the first one went to Kansas, where he had requested a change of address to. The second one went to California. And the very final one went back to Kansas. So based on the limited information that we have, and the A file is not complete on this, which is a problem of dealing with a 30-year-old file, it appears that that final notice wasn't actually sent to the most recent address that they had. Okay. Now, on the other issue, the effect of his escape conviction, my understanding is that the government concedes remand on that. Is that right? Well, the government is actually asking for a particular kind of remand. They've asked it — they asked for this Court to remand so that the BIA can reconsider whether it's an aggravated felony. But this Court in Fernandez-Ruiz does not do that. This Court should — Your position is we can do that here. Yes. This Court should say this is not an aggravated felony, and then Dent should — if he's not a citizen, he should be allowed to go back to apply for cancellation removal, which he wasn't eligible for the first time. You're down to about two and a half minutes. Okay. Would you like to save some? I do want to save it, but I also want to say that I do think that there is merit to his equal protection claim, and that's another way where he could be granted citizenship now as a matter of law without a remand. So I think this Court can do that either on the due process claim or on the equal protection claim. Thank you. Thank you. You have about two minutes for rebuttal. We'll hear from the Attorney General at this time. Ms. Clark. Good morning, Your Honors. May it please the Court. My name is Catherine Clark, appearing on behalf of the Attorney General. Mr. Dent makes it seem as though it was decades before his applications were adjudicated. But in fact, his mother's application was adjudicated in 1986. There is no factual evidence in the record to the contrary. And his own application was adjudicated in 1989. So it took 4 years, not 27, to adjudicate his mother's application, and 3 years, not 23, to adjudicate his own application. And this was established in discovery after the documents were produced before the district court. And additionally, the notices that Petitioner mentions concerning his own independent application were all sent during the period when he concedes that he was not keeping his address current with the government. And they were not in the record. Petitioner did not meet his obligation to introduce them before the district court. In fact, they were presented along with his judicial notice motion in Petitioner's attempt to acquire a second bite at the apple before the Court of Appeals. So accordingly, Petitioner makes no argument that the non-filed note on Roma Dent's application on page 298 of the excerpts of record is not, in fact, an adjudication. He denies it. He says this is not an adjudication, but he provides no factual basis, no basis in the record for that denial. Did the district court deal with the factual claims underlying his estoppel position? It did, albeit in a bit of a sort of roundabout fashion. On page 14 of the excerpts of record, after concluding that the court had remanded for a limited remand and that its statements about adjudication delay were dicta, the district court said, Officer Schutka's testimony explains what the notations on Petitioner's application mean. Her testimony, together with the U.S. District Court of Arkansas' 1989 denial of Petitioner's application for naturalization, makes clear that there was no delay in the naturalization process. So it did deal with those claims. It said that any potential issues of delay that went to Petitioner's nationality claim have been resolved by analyzing Petitioner's nationality claim. So, essentially, it also granted in the alternative summary judgment on the adjudication delay issue based on the findings of fact that it had made with respect to the nationality claim. What's your position on remand to the board? Remand to the board is necessary. I don't think we can determine whether it's an aggravated felony or not. The court, may I clarify just a bit? Sure. The remand to the board is necessary as to adjudication of eligibility for relief. And the government would request remand to the board as a prudential matter on the aggravated felony issues to give the board a chance to state its own position regarding the developments of law that have occurred in the interim. The intervening authority. Right, since 2010. Counsel, why? I don't understand from an efficiency standpoint why we would do that because even if, however the board rules, it's just a straight issue of law that we wouldn't owe any deference to the board's determination anyway, would we? The court would not. And this is a request that the government would make simply to give the board a chance to analyze the specific conviction record here. Additionally, Petitioner. Can I just ask from an efficiency standpoint, I don't understand what's to be gained by doing that. The issue is squarely before us. It's been fully briefed. It's a matter of law for us to decide anyway. Why wouldn't we just do it and not prolong the proceedings? What's the advantage? That's what I'm trying to figure out of the remand. From the government's perspective, the advantage is simply giving the board an opportunity to state its position. The court, of course, has the authority under Fernandez-Ruiz to make the determination on its own. It's simply a request as a prudential matter for developing the law and developing the board's position on these questions, because there are so many at issue here under, you know, as to divisibility, sort of general larger-scale issues, and then as to smaller-scale issues regarding the nature of escape convictions under Simmons-Savage. Are there any facts that need to be developed? Are the facts as presented to us pretty much what's going to happen down below? As to the specific aggravated felony charge, the facts, there are no additional documents to be introduced. As to other, Mr. Dent has acquired other criminal convictions since 2010, and the government would, of course, request an open record remand, regardless of, on other potential removability issues that may result from those charges, which would not be precluded under from, the government could charge, make additional charges in removal proceedings based on those subsequently accrued convictions under Bravo-Pedroza and Poblete-Mendoza. So we would request an open record remand as to removability, but not necessarily as to that particular aggravated felony charge under the escape conviction. There are multiple convictions at issue, or potentially at issue. Great. All right. Thank you very much for coming in today. We appreciate your articulation of the Attorney General's position. She's in the unique circumstance that if she applies for another job, she has to answer the question, have you ever been a defendant in a civil case? And she can add 5,000 asylum claims. Thank you for coming out today. That will be a long answer. Thank you. You have a few moments for rebuttal. Can I begin your rebuttal by asking you this question? Yeah. Are there any facts that the district court of Arizona with the Alaska judge in that proceeding that you were not, that your client was not allowed to present to support his estoppel duress equal protection claim that you would be able to present if we were to remand the district court on citizenship? So I think that answer is threefold. First of all, I think there are facts that didn't come to light in front of the district court that weren't made part of the record, but which exist in the A file. And so that opportunity, for example, the judicially noticed facts, would be valuable to us. Second of all, I'm not sure that any, there's all that much, so I'm deeply concerned that after 30 years, it is impossible to meaningfully explore why his petition was delayed. And I think there are genuine issues of fact definitely about the delay. It's very difficult to take a 27 or 33-year period, however you construe it, and say there are no issues. When the district court, I just heard the government say, basically granted summary judgment in response to a motion to dismiss, and on the motion to dismiss, as we've briefed, didn't consider all the evidence, construed the evidence favorably to the application denied in 2008. They issued a decision. That's on 120 of the record. They issued a decision denied on 360 of the record. There's a factual issue about when this petition was denied, and there's not an issue about the fact that he didn't get notice. One of the reasons she wanted to deny it on page 125 of the record, she wanted to give him notice, which he had never gotten before, that his childhood application was denied. So there are clearly factual issues which must be explored, because when you look at the district court's order on page 14 of the record, it is he completely literally dismissed the due process claim without investigating the facts related to that anywhere in his opinion. So I think that there are genuine issues of material fact which the district court would at a minimum need to reconsider in light of Brown, and now Brown provides the blueprint and the standard for doing that. On the aggravated felony, it's clear that we have an indivisible statute. There's no modified analysis that needs to happen, and the remand would be make him allow him to apply for a cancellation of removal.  Thank you so much. Thank you very much for your argument. Appreciate you coming in. Excellent arguments both. The case just argued will be submitted for decision.
judges: Hawkins, Watford, Rothstein